PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* RAMÓN GRAU, Defendant and Appellant.

No. 3123. Argued March 31, 1927.—Decided April 21, 1927.

*Pedro Baigés Gómez* for the appellant. *José E. Figueras* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Ramón Grau was charged with the offense of throwing from one of the galleries of the Teatro Yagüez during the exhibition of a picture, a paper cup containing a chemical liquid like *bromo benzílico,* which on account of its suffocat-

ing and caustic nature, caused a panic among the spectators to the extent of stopping the performance, and in consequence of such improper conduct there was a serious breach of the peace.

Policeman Angel A. Alvarez had occasion a few moments before the commencement of the show to approach the defendant and warn him not to smoke. The policeman testified that he saw a sanitary cup near the defendant. As soon as the lights were dimmed for displaying the picture he saw the people running, heard them screaming and smelled a suffocating acid; that when the light was turned on he saw the defendant running through the emergency door; that the cup fell where San Millán was and he picked it up. He did not know who threw the cup.

Policeman José Soto Rodríguez testified that he was in the theater in a seat near the orchestra. He described the confusion caused when the lights went out. When the light was turned on he saw that some one had thrown from the gallery a sanitary cup containing a liquid which turned out to be *bromo benzílico;* that shortly after the panic he spoke to the defendant, who was in shirt sleeves in company with two or three school boys, but he did not make any statement to him, and that he proceeded to arrest him.

Enrique San Millán was in the theater and described what happened when he felt on his person a liquid that had been thrown from above. He testified that he had not seen the defendant in the theater.

Isaías Ramírez was the usher in the theater that night and testified that the defendant, who was in shirt sleeves, quickly got up from his place to pass through the middle door and that he then held him by the arm because it was forbidden to pass through that door, whereupon the defendant said: ''I am going downstairs to look after my family who are in danger,'' and that he let him go.

Manuel Alayón testified that he was in the theater that night; that he knew the defendant and saw him going up

to the gallery; that while the witness was in his seat a liquid was thrown; that about three minutes thereafter he saw the defendant standing by his side and that his attitude was normal.

Mario Campos testified that he was an employee of the *Bolsa;* that he knew the defendant and saw him about 7:30 p. m. when he asked for a sanitary cup, as was his custom almost every night, and that he gave it to him, as he usually did to all who asked for them.

This was all of the evidence for the prosecution. The appellant made a motion for nonsuit which the court overruled. The evidence for the defense was then heard, consisting of the testimony of three students who were in the company of the defendant on the night mentioned in the complaint and tending to show that they were close to the defendant, but did not see him throw any liquid in the theater.

The only error assigned is the erroneous weighing of the evidence by the trial judge. In our opinion he committed error. The only circumstantial evidence to connect the defendant with the commission of the offense is the testimony of policeman Alvarez, who saw the defendant with a sanitary cup near him shortly before the projection of the film, and that of witness Campos who gave the sanitary cup to the defendant. No other element of proof throws any light on the matter. The policeman did not say that he smelled anything when he approached the defendant to warn him not to smoke. The cup found in the theater was not identified as being the same cup that Campos gave the defendant.

The evidence in this case is circumstantial and it could not be held that it was inconsistent with any rational hypothesis that could be adduced regarding the innocence of the defendant. The rule to be followed in cases in which the evidence is circumstantial is as follows:

"And where a criminal charge is to be proved by circumstantial

evidence, the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with any other rational conclusion." Greenleaf, vol. 1, sec. 34.

The proof, therefore, is insufficient. The judgment appealed from must be reversed and the defendant acquitted.